UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHERMAN MEALEY | |
| VERSUS | CIVIL ACTION |
| | NO. 16-716-JWD-RLB |
| SHERIFF SID J. GAUTREAUX, III, ET AL. | |

## RULING ON HMA REPORT AND NOTICE

Before the Court is the issue of the admissibility of a proposed trial exhibit of plaintiff Sherman Mealey ("Plaintiff" or "Mealey"), listed in the Pretrial Order as Plaintiff's Exhibit 79. (Doc. 213 at 16.) The Defendant, City of Baton Rouge/Parish of East Baton Rouge ("Defendant" or "City/Parish") claims it is irrelevant hearsay. Plaintiff argues it is relevant non-hearsay because it is being introduced for a purpose other than to show the truth of its contents, namely to show that Defendant was on notice of certain alleged deficiencies in the health care being given to prisoners in the East Baton Rouge Parish Prison ("EBRPP"), including Plaintiff. The Court has carefully reviewed the motions and memoranda on this issue, and for the following reasons, Defendant's challenge to Plaintiff's Exhibit 79 is, for the limited purpose of showing notice, denied and it will be admitted for that limited purpose assuming a proper foundation for its introduction is laid.

### I.     Background

The issue of the admissibility of Health Management Associates' ("HMA") data has been presented to the Court in several ways. Among other proposed Plaintiff's exhibits, Defendant challenged the following in its Motion in Limine to Exclude Plaintiff's Exhibits and Subject Matters (Doc. 206):

>Plaintiff's Exhibit 79 (HMA Final Power Point presentation)
>Plaintiff's Exhibit 88 (HMA Notes)
>Plaintiff's Exhibit 89 (HMA Chart)
>Plaintiff's Exhibit 90 (HMA draft Power Point presentation)

(Doc. 206 at 1.)

Plaintiff withdrew Exhibits 88 and 90 (Doc. 214 at 7), and the Court therefore did not rule on this part of Defendant's motion. As to Exhibit 89, Defendant's motion was granted but the Court qualified its ruling by saying that should Defendant make aspersions regarding the motive or intent of HMA's author, the Court would consider admitting this evidence for the limited purpose of rebutting those assertions.

As to Plaintiff Exhibit 79, HMA's Final Power Point presentation ("the HMA report") (Doc. 166-5 at 2-31), the Court, in its oral ruling of June 25, 2020, rejected Defendant's argument that the HMA report was irrelevant, pointing to an earlier ruling in this case, *Mealey v. Gautreaux*, No. 16-716-JWD-RLB, 2020 WL 515853, at *22 (M.D. La. Jan. 31, 2020). However, the Court granted Defendant's motion to exclude the only line in the report about which Defendant complained ("Need sufficient compliant space for population."). For purposes of that discrete issue, the Court found it unnecessary to consider Plaintiff's argument that the HMA report was not hearsay because it was being introduced not for its truth, but to show that the report put Defendant on notice as to certain alleged deficiencies in health care at EBRPP.

The admissibility of the HMA report was also raised by Plaintiff's Motion in Limine Against City/Parish of East Baton Rouge. (Doc. 166-1 at 10-13.) In that motion, Plaintiff asked the Court for "guidance" as to whether the HMA report, introduced without the testimony of its authors, would be admissible. (*Id*. at 10.) Plaintiff argued it was not hearsay under Federal Rule of Evidence 801(d)(2)(D) because the authors of the report, Jack Raba and HMA, were agents of Defendant City/Parish. (*Id*. at 10-13.)

2

The Court ruled it was "unable to decide based on the information provided [at that time] whether an agency relationship existed..." and therefore gave the parties seven days from June 25, 2020 to brief the issue. (Doc. 229 at 3.) Both parties did. (Docs. 223 and 226.) On July 15, 2020, the Court issued oral reasons finding that "the HMA report does not qualify as non-hearsay under the provisions of FRE 801(d)(2)(D)." (Doc. 247 at 3.) However, the Court gave Plaintiff 30 days to brief the issue of whether the HMA report is not hearsay because Plaintiff is not introducing it for the truth of its content but to show that notice was given to Defendant. Defendant was given 15 days to respond. (*Id*. at 3-4.) The parties filed briefs on this issue (Docs. 248 and 249), and the Court is prepared to rule.

## II.     Arguments of the Parties

As a general matter of evidence, Plaintiff argues that statements are not hearsay if offered "to show the effect on the listener" (Doc. 248 at 1 (quoting *White v. Fox*, 470 Fed. App'x. 214, 222 (5th Cir. 2012))), or "if introduced to show a speaker and/or listener's knowledge, notice or state of mind." (*Id.* (quoting *I.F. v. Lewisville Indep. Sch. Dist.*, No. 14-359, 2016 WL 7734555, at *7 (E.D. Tex. Dec. 1, 2016) (citing *United States v. Obregon-Reyes,* 507 Fed. App'x. 413, 424 (5th Cir. 2013))).) In this case, where Plaintiff seeks to establish liability under both the ADA and 42 U.S.C. § 1983, "notice of serious potential risks to inmate health or safety is a central inquiry…." (Doc. 248 at 4.)

To prove his § 1983 claim, Plaintiff must prove Defendant's deliberate indifference to Plaintiff's health or safety, i.e. that Defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to Plaintiff] and…must draw that inference." (*Id.* (quoting *Mealey,* 2020 WL 515853, at *13).) As to his ADA claim, "a plaintiff must show that the defendant committed 'intentional discrimination,' which requires that the

3

defendant receive 'actual notice of a violation.'" (*Id.* (quoting *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 575 (5th Cir. 2018)).)

In his brief, Plaintiff points to 8 examples of deficiencies noted in the HMA report which provided notice to Defendant of deficiencies in EBRPP's health care for purposes of both ADA and § 1983. (Doc. 248 at 2-3.) Among those items which Plaintiff points to are a "[n]otable vacancy rate for RN and LPN positions" (Doc. 248 at 2 (citing Doc. 223-1 at 12)), and that "[m]edical provider staffing is insufficient to meet the needs of the EBR patient population" (*id.* (citing Doc. 223-1 at 12)). Plaintiff cites this Court's decision in *Francois v. Gen. Health Sys.*, No. 3:17-CV-522-JWD-RLB, 2020 WL 838434, at *2 (M.D. La. Feb. 20, 2020) to support his contention that the HMA report is not hearsay because it is not being introduced for its truth but rather, to show that it gave Defendant notice of these deficiencies and others.

Defendant does not dispute the general principles of evidence argued by Plaintiff and concedes that notice is a requirement of Plaintiff's case under the ADA and § 1983. Rather, Defendant disputes the applicability of these principles to this case and to the issue before the Court. Defendant argues that any "notice" provided by the HMA report to the Metropolitan Council is irrelevant since the Council "does not create policies for EMS and then-existing PMS" who provided the actual health care at EBRPP. (Doc. 249 at 1.) "[T]he Metropolitan Council was not (and is not) the prison official or administrator charged with setting or regulating health care policies or procedures at the jail." (Doc. 249 at 4.) This function was served by the Health Care Manager and Medical Director for PMS. "The Metropolitan Council only approved budgetary funding for the cost of operations." (*Id*. at 5 (record citations omitted).)

Second, unlike the document in question in *Francois v. Gen. Health Sys., supra*, relied upon by Plaintiff, the HMA report was a) "generalized and not specifically applicable to the

4

plaintiff's experiences" (Doc. 249 at 3); b) did not "opine that the City/Parish's medical services in the jail violated applicable law or legal requirements" including the ADA (*id*. at 2); and c) did not request an accommodation for Plaintiff or anyone else and, in fact, "did not involve an ADA or RA analysis whatsoever" (*id*. at 1).

Finally, Defendant makes merits-based arguments that the City/Parish was "quick-moving" and "reasonable" in "transitioning from internal health care to a private [ ] healthcare provider [in] just under six months after HMA gave its presentation to the Metropolitan Council." (*Id.* at 1-2.) Defendant complains that the HMA report did not include items such as the audit certifications by the Louisiana Department of Corrections (*id*. at 2) and that the HMA report ignores Plaintiff's medical records which "conflict[] with the substantive findings contained within the HMA slides." (*Id*. at 3-4.)

### III. Discussion

In its ruling on motions for summary judgment in this case, the Court provided this background and summary of Plaintiff's ADA allegations.

> Plaintiff, Mr. Mealey is a paraplegic, who is unable to walk, stand, or use his legs without assistance and requires a wheelchair for his primary means of mobility. As a paraplegic, Mr. Mealey has a qualified disability under the Americans with Disabilities Act ("ADA"). Mr. Mealey was first incarcerated in 2012 ("2012 Incarceration") at the East Baton Rouge Parish Prison ("Prison"). Mr. Mealey was also incarcerated at the Prison from August 10, 2015 to October 24, 2016 ("2015 Incarceration"). Plaintiff sued the Sheriff[1] and the City/Parish (together, "Defendants") alleging that during his 2015 Incarceration Defendants violated the ADA and the Rehabilitation Act ("RA") as well as his constitutional rights pursuant to § 1983. Plaintiff alleges that due to his paraplegic condition, he requires specific accommodations, and that the City and the Sheriff impermissibly denied his requests for those accommodations. These accommodations include but are not limited to: (1) access to a shower chair; (2) materials to elevate his feet to reduce swelling; (3) catheters to help him urinate; and (4) suppositories to help him defecate. Plaintiff alleges that as a result of the lack of accommodation he has suffered: (a) swollen legs; (b) bedsores and infections; (c) urinary tract infections;

---

[1] The Court granted in part and denied in part the Sherriff's Motion for Summary Judgment. (Doc. 174 at 47-48.) Thereafter Plaintiff settled all claims with the Sherriff (Docs. 191 and 194), who is no longer a party to the case.

(d) lack of personal hygiene; (e) personal humiliation, disgrace and embarrassment; (f) invasion of privacy through the unwanted touching by other inmates; (g) sleep deprivation; and (h) invasion of his civil rights.

*Mealey,* 2020 WL 515853, at *1.

As to Plaintiff's § 1983 claim, the Court found:

Plaintiff has produced sufficient evidence to create a question of fact as to whether the Prison conditions resulted in an extreme deprivation of the minimal measure of life's necessities. Mr. Mealey is a paraplegic and as a result of his condition must use catheters and suppositories. Mr. Mealey recounted that due to inadequate access to medical care, Mr. Mealey went without catheters, lubrication for his catheters, suppositories, and adult diapers. Mr. Mealey describes that even when he had catheters, the lack of lubrication for those catheters meant that he had to use his own spit to insert them into his urethra. Further, the lack of suppositories meant that he had to physically remove fecal matter from his anal cavity. The lack of access to adult diapers meant that he also was forced to sit in his own fecal matter.

Coupled with this lack of access to basic hygienic items is the fact that Mr. Mealey was not able to meaningfully clean his body because of the lack of useable shower chairs and the fact that he was turned away from showering in the Infirmary. Although both Defendants make much of the testimony that Mr. Mealey was always able to propel his wheelchair into the showers while he was in the general prison population, Plaintiff meaningfully points out that this does not mean Mr. Mealey was able to clean himself in the shower. Mr. Mealey's testimony shows that to attempt to clean himself he had to: (1) shower in his wheelchair which left it and him sitting in a damp wheelchair that smelled of fecal matter; (2) ask other prisoners to hold him, which put him in their debt, or (3) try to find a trash bag to cover his wheelchair. Mr. Mealey also points to evidence that as a result of the lack of hygienic supplies, the inability to shower, he developed ulcers, and bed sores as well as suffered a fall from his wheelchair that had broken due to mold and rust.

*Id.* at *15 (omitting record citations).

Regarding the deliberate indifference component of Plaintiff's § 1983 claim, the Court wrote:

As to the second element, Plaintiff has produced sufficient evidence to show that prison officials and medical staff at the Prison acted with deliberate indifference. Specifically, Mr. Mealey points to evidence that shows that when Mr. Mealey requested that prison officials and medical staff provide access to hygienic supplies or allow him to shower in the Infirmary, he was repeatedly turned away. ***

6

> Mr. Mealey's repeated requests through inmate grievances that were rejected by both the Sheriff's employees and Prison Medical Service employees provided those prison officials and nurses with actual knowledge that a substantial risk of serious harm existed. Furthermore, if proven true that Mr. Mealey (1) smelled of fecal matter due to his lack of access to suppositories and adult diapers; (2) suffered repeated falls from his broken wheelchair due to using it in the shower with injuries treated in the Infirmary; (3) suffered urinary tract infections from a lack of sufficient catheters and lubrication that were treated in the Infirmary, then it is a reasonable inference that the risk of harm was obvious. As such, the Court concludes that Mr. Mealey has produced sufficient evidence to show that the prison officials and nurses were deliberately indifferent to the inhumane conditions of confinement Mr. Mealey suffered from an inadequate access to medical care.

*Id.* at *16.

In its oral ruling of June 25, 2020, the Court previously rejected Defendant's claim that the HMA report was not relevant to Plaintiff's claims against the City Parish, citing *Mealey,* 2020 WL 515853, at *22.[2] Both Plaintiff and Defendant agree that Plaintiff must prove that Defendant had notice of the alleged violations in order to succeed in his ADA claim. (Doc. 248 at 4; Doc. 249 at 6 (both citing *Miraglia,* 901 F.3d at 575).) Notice is also important to Plaintiff's § 1983 claim since Plaintiff must prove Defendant was "aware of facts from which an inference can be drawn that a substantial risk of harm exist[ed]…and…[drew] that inference." *Mealey*, 2020 WL 515853, at *13 (quoting Pattern Civ. Jury Inst. 5th Cir. 10.9 (2014)).

Given the allegations Plaintiff makes regarding the inadequate health care he received at EBRPP and Defendant's notice of same for both his ADA and § 1983 claims, many of the items set out in the HMA report, including those quoted in footnote 2 and those enumerated by

---

[2] "At the request of the Metropolitan Board, Health Management Associates conducted an onsite visit from February 23-26, 2016, interviewed staff, and looked at the Prison Medical Services Records. Once its independent study was completed, Health Management Associates Report and Recommendations for Clinical Operations ('Report') reported its findings to the City/Parish administrators and the Metropolitan Board. The Report outlined that the medical care was 'insufficient to meet the needs of the EBR prison population' the 'physical plant is notably deficient' and 'need sufficient ADA compliant space for population.' The report likewise details a 'notable vacancy rate for RN and LPN positions' and that 'medical provider staffing[was] insufficient.' Further it highlighted that the health care provided was 'episodic and inconsistent' and that the Prison would not pass standards outlined by the National Commission on Correctional Health Care's standards for healthcare in a correctional facility." *Id.* (record citations omitted).

7

Plaintiff at Doc. 248 at 2-3, "have a tendency to make [Plaintiff's allegations against Defendant] more … probable than it would be without the evidence" Fed. R. Evid. 401(a), i.e. they are relevant. The fact that the HMA report does not "opine that the City/Parish's medical services in the jail violated applicable law or legal requirements" including the ADA (Doc. 249 at 2), did not request an accommodation for Plaintiff or anyone else, and "did not involve an ADA or RA analysis whatsoever" (*id*. at 1), does not render the report irrelevant.  In addition, the fact that Defendant has evidence which it claims counters Plaintiff's allegations on the merits does not render the challenged evidence irrelevant.

Similarly, the fact that the HMA report does not "opine that the City/Parish's medical services in the jail violated applicable law or legal requirements" including the ADA (Doc. 249 at 2), did not request an accommodation for Plaintiff or anyone else, and, "did not involve an ADA or RA analysis whatsoever" (*id*. at 1), does not mean that the report did not give notice to Defendant of alleged deficiencies relevant to Plaintiff's claims.  The fact that the HMA report does not criticize (or even mention) the care received by Plaintiff does not gainsay the report's notice of items relevant to Plaintiff's claim. The fact that Defendant disagrees with the HMA report's findings and has evidence which it claims counters Plaintiff's allegations on the merits does not gainsay the notice the HMA report provided to Defendant.

The HMA report was commissioned by Defendant and presented to Defendant. It clearly provided notice to Defendant of its contents and these included alleged deficiencies in EBRPP's healthcare which bear on Plaintiff's claims. If being offered solely for the purpose of establishing notice and not for the truth of its contents, then the HMA report is not hearsay under Fed. R. Evid. 801(c)(2). "Perhaps the most straightforward illustration of the effect-on-the-listener, non-hearsay purpose for offering an out-of-court statement is to show notice. A statement can be

8

offered to demonstrate that a person who heard it was placed on notice of a pertinent matter." 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6719 (2020 ed.). *See also Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990) (press releases were not hearsay because "not offered to prove their truth, *see* Fed. R. Evid. 801(c), but rather to show that the Landowners had notice of the potential flooding circumstances").

Defendant attempts to distinguish this Court's decision in *Francois*, by arguing that there, the email in question contained notice of an alleged violation of the ADA and a request for accommodation whereas here, the HMA slideshow is more general in its statements of alleged deficiencies in the health care being received by inmates at EBRPP. (Doc. 249 at 3-4 (citing *Francois*, 2020 WL 838434, at *2).) For purposes of Rule 801(c)(2), this is a distinction without a meaningful difference. In both cases, the document in question gave notice to Defendant of information relevant to the ADA and §1983 claims.

Therefore, for the limited purpose of showing notice to Defendant, Defendant's Motion in Limine to exclude Plaintiff's Exhibit 79 is denied.[3] In order to minimize confusion or prejudice, the Court is willing to instruct the jury as to the limited purpose for which the evidence is being received. Plaintiff does not object to such a limiting instruction. (Doc. 248 at 5 n.13.) The Court will give said instruction if requested by the parties at the time the HMA report is mentioned or offered into evidence.

---

[3] For reasons given in its oral reasons of June 25, 2020, the Court granted Defendant's motion to exclude the phrase "Need sufficient compliant space for population" from the HMA report.

## IV.     Conclusion

For the foregoing reasons, that part of Defendant's Motion in Limine (Doc. 206) seeking to exclude Plaintiff's Exhibit 79, the HMA report, is denied.

Signed in Baton Rouge, Louisiana, on December 1, 2020.

							_____
							**JUDGE JOHN W. deGRAVELLES**
							**UNITED STATES DISTRICT COURT**
							**MIDDLE DISTRICT OF LOUISIANA**